The STATE ex rel. MONTAGUE

v.

POLICE AND FIREMEN'S DISABILITY AND PENSION FUND.

[Cite as *State ex rel. Montague v. Police & Firemen's Disability & Pension Fund* (1992), 78 Ohio App.3d 661.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–525.

Decided Oct. 8, 1992.

662

Fell & Marcus Co., L.P.A., George N. Fell II and Steven E. Marcus, for relator.

Lee Fisher, Attorney General, and Cherry Lynne Poteet, Assistant Attorney General, for respondent.

WHITESIDE, Judge.

This original action in mandamus was originally referred to a referee, but recently such referral was canceled by withdrawing the case from the referee for assignment by the assignment commissioner of this court to a panel of judges. The matter was submitted upon stipulated evidence and the briefs of counsel, and there was no oral argument upon the merits.

Relator, Ted M. Montague, seeks a writ of mandamus ordering respondent Police & Firemen's Disability & Pension Fund, acting through its board of trustees ("board of trustees"), to vacate and set aside its order denying relator's application for permanent total disability and ordering respondent to allow said application in its entirety.

The stipulated evidence indicated that relator was a police officer employed by the Toledo Police Department for nearly twenty-four years. In March 1987, relator filed an application for disability retirement to be supported by his attending physicians, Dr. Habusta and Dr. Snyder. By letter dated June 24, 1987, the "assistant director-benefits" of respondent notified relator that the board of trustees had granted relator not permanent total disability benefits but, instead, "maximum partial disability retirement pursuant to Division (C)(3) of Section 742.37 of the Revised Code." Relator was also notified in that letter that he had a right to appeal this determination within sixty days. The appeal in question was back to the board of trustees. Relator did appeal the initial determination. By letter dated September 30, 1987, from the same person who signed the original letter but now under the title of "retirement supervisor," relator was notified of the result of his appeal, the letter stating:

"At its recent meeting, the Board of Trustees heard the appeal of its previous decision concerning your application for disability benefits. I write to inform you of the Board's decision as well as what steps need to be taken to begin the benefit payment.

"BOARD ACTION: The Board of Trustees, after a careful review of the medical evidence, decided not to change its original grant."

As a result of this determination, relator has been receiving partial disability retirement in the amount of sixty percent of the average of relator's three years of highest earnings.

Under date of March 9, 1987, one of relator's attending physicians, Dr. Habusta, rendered a report on respondent's form DR–3, "attending physician's report," in which it is stated that: "Pt. is unable to function in his employment because of pain and weakness—past experience also as heavy equipment operator and carpenter—but unable to do these jobs also." Under Section 5 of the report, which concludes four possible preprinted choices for the "Attending Physician's Conclusion and Recommendations," Dr. Habusta checked the block for:

"The applicant is permanently incapacitated for performance of duty as a (fire fighter) or (police officer). His/her disability is 'total' meaning an inability to perform the duties of any gainful occupation for which the applicant is reasonably fitted by training, experience, and accomplishment; provided that absolute helplessness is not a prerequisite of total disability."

Another attending physician, Dr. Snyder, completed the same report, checking the same box as his opinion. Under the general summary section, Dr. Snyder stated:

"The chronic unremitting pain and instability of his low back prohibit him resuming his duties as a police officer. Most other kinds of work would also in most instances be out of the question."

Under date of May 19, 1987, a Fund-appointed physician, Dr. Pearson, completed a similar form but checked a different box for his opinion and recommendation, namely one that stated:

"The applicant is permanently incapacitated for performance of duty as a (fire fighter) or (police officer). His/her disability is 'partial' and performance of any other gainful occupation would depend upon the occupation in question."

Dr. Pearson also gave a narrative statement by a letter report dated May 19, 1987, in which he stated: "*COMMENT:* Because of the chronic nature of his problems, he probably is incapacitated for his usual performance of duty as a police officer." This narrative report gave no indication as to whether relator could perform some other gainful employment. Under date of August 8, 1987, Dr. Habusta rendered a second report in response to relator's attorney's requests for further information. In this report, Dr. Habusta stated:

"Reflecting on the definition of total disability, it is one in which 'an applicant is permanently incapacitated from performing duty as a fire fighter or a police officer, and unable to perform gainful duties in the occupation in which the applicant is fitted for by training, experience, accomplishments, etc.' It is my opinion that Mr. Montague fits this description and is permanently and totally disabled."

Also stipulated was an Industrial Commission decision of December 19, 1986, relative to relator's work-related injuries indicating that relator did not sustain a new compensable injury on May 27, 1986, but did suffer a recurrence of an injury recognized in a previous claim. The parties stipulated that the foregoing was evidence in this case and represent copies of matters contained within the Police & Firemen's Disability & Pension Fund file.

R.C. 742.01(F) defines "total disability" as:

" * * * [I]nability to perform the duties of any gainful occupation for which the member of the fund is reasonably fitted by training, experience, and accomplishments, provided that absolute helplessness is not a prerequisite of total disability."

R.C. 742.37(C)(2) and (3) provide in pertinent part, as follows:

"Members of the fund * * * shall receive pensions and benefits in accordance with the following provisions:

" * * *

"(2) A member of the fund who is permanently and totally disabled as the result of the performance of his official duties as a member of a police or fire department of a municipal corporation or a fire department of a township shall be paid annual disability benefits until death, payable in twelve monthly installments, in an amount equal to seventy-two percent of his annual salary for the last year he was in the active service of such police or fire department.

"(3) A member of the fund who is partially disabled as a result of the performance of his official duties as a member of a police or fire department of a municipal corporation or a fire department of a township shall, if such disability prevents him from performing those duties and impairs his earning capacity, receive annual disability benefits, payable in twelve monthly installments, in an amount to be fixed by the board. * * * [B]ut in no event shall a benefit paid to such member exceed sixty percent of his average annual salary. * * * "

There appears to be no definition of "partial disability," although presumably it is a disability which is not total, as defined by R.C. 742.01(F), which prevents the member from performing his duties as a member of the police or fire department and which impairs his earning capacity. Arguably, it also

includes "total disability" if such total disability is not permanent as defined by R.C. 742.01(G). Here, there is no contention made that relator's disability is not permanent, but it was found not to be total by the implication from the two decisions of the board of trustees. Nor does there appear to be any dispute but that relator's disability (whether total or partial) is a result of performance of his official duties and prevents him from performing those duties.

■ Unfortunately, the evidence before us and the decision of respondent board of trustees are not sufficient to permit a determination of the more fundamental merit issue. The decision of respondent's board failed completely to adhere to any fundamental predicate giving rise to an explanation of either the basis for the decision, the evidence relied upon, or the reasoning utilized in reaching the decision. In *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio* (1990), 49 Ohio St.3d 224, 551 N.E.2d 989, syllabus, the Supreme Court held that:

"In determining whether a person is totally disabled for purposes of the Police and Firemen's Disability and Pension Fund of Ohio, the board of trustees of the fund cannot rely upon general statements made by doctors either in a written report or in preprinted forms supplied by the board, which state that a member can engage in 'some' type of gainful employment. The board must state that it considered the member's training, experience, and accomplishments in determining whether he can engage in other gainful employment."

■ The decisions of the board of trustees here fail completely to comport with this requirement of *Kinsey*. In *Kinsey*, the Supreme Court found to the effect that the standards for a board decision granting or denying a permanent total disability application are essentially governed by the same rules as applied to decisions of the Industrial Commission. Accordingly, the abuse of discretion or "some evidence" rule is applicable. As in *Kinsey*, this court is unable to find that the record contains "some evidence" to support the board's determination that *Kinsey* is not "totally disabled," as defined in R.C. 742.-01(F). Rather, as stated in the opinion in *Kinsey*, *id.* at 227, 551 N.E.2d at 993:

"R.C. 742.01(F) specifically states that a member need not be absolutely helpless in order to qualify for total disability. It also requires that the gainful occupations available to the claimant are those that are reasonably suitable to the claimant because of his training, experience, and accomplishments. Thus, determining that appellant is qualified to do some kind of work, such as sedentary or nonstressful work, does not necessarily mean that he is not totally disabled for purposes of the Fund. Instead, in order to determine

that appellant is not 'totally disabled' within the meaning of R.C. 742.01(F), there must be 'some evidence' in the record that the gainful occupation he can engage in, after his disability, is an occupation for which he is reasonably fitted by way of training, experience, and accomplishments."

We are unable to distinguish this case from *Kinsey*. Although the Supreme Court did not expressly refer to *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946, in *Kinsey*, it would appear that the principles of *Stephenson* are also applicable to decisions of respondent board of trustees since the gist of the *Kinsey* decision is that nonmedical factors must be considered by the board in determining total disability applications, although perhaps the nature of the nonmedical factors may vary in police and firemen disability cases. Subsequent to the decision in *Kinsey*, the Supreme Court decided the case of *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, the syllabus of which states that:

"In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision."

We find no reason for the same principle not to apply to decisions of respondent's board of trustees. As stated in *Noll* at 206, 567 N.E.2d at 248–249, respect to the Industrial Commission:

"The time has come for the commission to recognize its responsibility to prepare fact-specific orders which will be meaningful upon review. It is well-settled that the commission has the exclusive authority to determine disputed facts and weight of the evidence. * * * However, a meaningful review can be accomplished only if the commission prepares orders on a case-by-case basis which are fact-specific and which contain reasons explaining its decisions. * * * Such order must specifically state what evidence has been relied upon to reach its conclusion and, most important, briefly explain the basis of its decision."

From the evidence before us, we are completely "in the dark" as to any reason for denial of relator's application for total disability retirement. Nothing in the respondent's board of trustee's decision gives any illumination upon the subject.

As a result, relator contends that this court should grant a writ ordering the respondent Fund to grant him total disability retirement. Again, we are unable to distinguish *Kinsey, supra,* in which a similar contention was made. In *Kinsey* at 227, 551 N.E.2d at 993–994, the Supreme Court stated:

"However, a lack of some evidence to support the board's finding that appellant is partially disabled does not necessarily mean there is some evidence to support a finding that he is totally disabled. As stated in *State, ex rel Lampkins, v. Dayton Malleable* (1989), 45 Ohio St.3d 14, 16–17, 542 N.E.2d 1105, 1108, ' * * * a lack of evidence supporting a denial of * * * benefits cannot automatically translate into some evidence supporting an award of such benefits.' This court cannot substitute its judgment for that of the board, which has much discretion in these matters. * * * "

Accordingly, the appropriate writ is a so-called "limited writ" ordering the Fund to vacate its board's present order and to enter a new order, either granting or denying the application, complying with the requirements of *Kinsey* and those we have set forth above.

For the foregoing reasons, a writ of mandamus will issue, ordering respondent Police & Firemen's Disability & Pension Fund (1) to vacate its board of trustees' order denying relator's application for permanent and total disability compensation and granting only partial disability benefits; (2) to enter a new order either granting permanent and total disability compensation, or partial disability compensation, as the board finds supported by the evidence; and (3) to state in such order the basis and reasoning for the decision and the evidence relied upon, including a statement of the nature of the consideration of the relator's training, experience, and accomplishments in determining whether he can engage in gainful employment.

*Limited writ granted.*

McCormac and Peggy Bryant, JJ., concur.